**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PH,** ***a minor, by and through her adult next friend and legal guardian, Patricia Hunt*** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 1:24-cv-134-TBM-RPM** |
| **KESHAWN BELCHER,** ***et al.*** | **DEFENDANTS** |

---

| | |
|---|---|
| **JB,** ***a minor, by and through his adult next friend and legal guardian, Jonathan Baldwin*** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 1:24-cv-135-TBM-RPM** |
| **KESHAWN BELCHER,** ***et al.*** | **DEFENDANTS** |

---

| | |
|---|---|
| **DTC,** ***a minor, by and through her adult next friend and legal guardian, Luis Miguel Torres Morales*** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 1:24-cv-136-TBM-RPM** |
| **KESHAWN BELCHER,** ***et al.*** | **DEFENDANTS** |

---

## ORDER AND MEMORANDUM OPINION

Defendant KeShawn Belcher was employed by Kelly Services, Inc., a temporary staffing agency that contracted with various school districts to provide substitute teachers. While employed

as a substitute teacher by Kelly Services from 2022 to 2023, Belcher was placed at several schools on the Mississippi Gulf Coast, including North Gulfport Middle School and Ocean Springs Middle School. While at North Gulfport Middle School in September of 2022, Belcher was briefly detained by local police, although not ultimately charged, after students saw nude photographs of Belcher, and others, on Belcher's phone. At the time of the detention, officers also confiscated three knives in Belcher's possession. Afterwards, Kelly Services allegedly told Belcher that the school did not have enough evidence to charge him with a crime, so there was nothing for them to worry about. The next semester, Belcher was placed at Ocean Springs Middle School. There, he sexually assaulted Plaintiff DTC after inviting her to his classroom under the pretense of discussing a class assignment.[1] [40]. at pps. 3-4. It is undisputed that Belcher engaged in inappropriate behavior during his placements at both of these schools.[2] But this opinion does not turn on Belcher's conduct—for which he has been criminally convicted and sentenced to twenty years in prison—but rather who knew what and when.

In the light most favorable to Plaintiff, Kelly Services knew of Belcher's misconduct at North Gulfport Middle School, hid the conduct, and continued to place him at various schools, including his eventual placement at Ocean Springs Middle School. Plaintiff's Section 1983 claim and her negligent retention and supervision claim against Kelly Services will proceed, as will Plaintiff's claim for punitive damages. But her remaining claims against Kelly Services are dismissed. Finally, all of Plaintiff's claims against Ocean Springs School District are dismissed but

---

[1] Since this opinion addresses only Plaintiff DTC's claims against Kelly Services and Ocean Springs School District, "Plaintiff" refers solely to Plaintiff DTC and not her co-plaintiffs.

[2] While at Ocean Springs Middle School, Belcher also "made sexual remarks to PH and even asked her for oral sex" during school hours; and sent "JB a text that he was horny, sent pictures of himself naked and sent a video of him masturbating." [40]. at pps. 3-4.

for her negligent retention and supervision claims. A reasonable fact finder could find that Ocean Springs School District had constructive knowledge of Belcher's unfitness to teach after receiving a report from the girls' soccer coach detailing inappropriate, and in the light most favorable to Plaintiff, potentially sexual misconduct.

## I. BACKGROUND AND PROCEDURAL HISTORY[3]

Kelly Services, Inc., is a temporary staffing agency that contracts with school districts along the Mississippi Gulf Coast to provide substitute teachers. Defendant KeShawn Belcher worked for Kelly Services in 2022 and 2023. Before Kelly Services could place Belcher at his first assignment, however, Belcher was required to complete a pre-employment background check. Kelly Services provided Belcher with a list of school district locations where he could be fingerprinted. Pascagoula School District was one such location, and Belcher arrived at the Pascagoula School District on June 27, 2022, to complete his fingerprints. Afterward, Kelly Services received a certification from the Pascagoula School District that Belcher's fingerprints and background check were "in compliance with state law." [154-1], p. 3. Having found no criminal history, Kelly Services placed Belcher at his first substitute teacher assignment at Harrison Central High School. [55-4], p. 1. Kelly Services also completed its own background check on Belcher on July 14, 2022, which confirmed that Belcher had no criminal history. Belcher was later placed at Gautier High School and West Harrison Middle School, without incident.

On September 1, 2022, Belcher was placed at North Gulfport Middle School. The next day, a few of Belcher's students asked him questions about his personal life and asked to see photos of his family. Belcher gave the students his phone and the students "scrolled through the photos and

[3] The timeline of misconduct is particularly important in this case, so for ease of reference, the Court has included a chart at the end of this Opinion.

saw nude photos of [Belcher] and others." [55-4], p. 1. After school that day, a student reported the incident to the North Gulfport Middle School Principal and the assistant principal. Belcher was then approached by the principal, the assistant principal, and the Gulfport Police Department School Resource Officer. The officer searched Belcher's phone and confiscated three knives that Belcher had. After being questioned, Belcher was detained in the back of the officer's vehicle. Eventually, the principal advised Belcher that if he left the premises and did not return, North Gulfport Middle School would not press charges. Belcher agreed and he was escorted off campus. [143-3], pps. 4-6 (background check showing no criminal history in March of 2023); [143-5], p. 4 ("Officer Seymour released Belcher on scene, no charge.").

Kelly Services is adamant that it had no knowledge of Belcher's misconduct at North Gulfport Middle School. *See* [144], p. 8, 16. Instead, Kelly Services claims that when North Gulfport Middle School "initially reported the incident to Kelly Services in September of 2022, the wrong substitute teacher (Cedric Charles) was identified, not Belcher." *Id.* at p. 16; [143-4]. But Belcher has testified to the opposite. Belcher says that Kelly Services contacted him shortly after the incident for a statement and he told Kelly Services "everything that had happened." [55-4], p. 2. After providing details of the incident, Belcher states that Kelly Services advised him that North Gulfport Middle School "did not have enough evidence to charge [him] with a crime, so [he] was in the clear, and [they] all had nothing to worry about." *Id.* It is undisputed that Belcher was removed from North Gulfport Middle School and was never placed there again.

After the incident at North Gulfport Middle School, Kelly Services placed Belcher at D'Iberville High School. But Belcher was fired after throwing a marker at a student and was temporarily suspended by Kelly Services. [55-4], p. 2.

Following his temporary suspension, Kelly Services obtained a new background check on March 30, 2023, before placing Belcher at another school. That background check revealed no criminal history either, and on Monday, April 17, 2023, Kelly Services placed Belcher at Ocean Springs Middle School to teach seventh grade math. [143-3], pps. 4-6. On Tuesday, Belcher was reported to the school administration for instructing students to do "wall-sits" as punishment. Following this report, the assistant principal met with Belcher on Wednesday and counseled Belcher on appropriate punishment and disciplinary actions pursuant to the Ocean Springs Middle School Handbook. [145-1], pps. 37-38. Then, at approximately 6:00 p.m. on Thursday, the assistant principal received a report from "the [girls'] soccer coach . . . that Belcher had taken one of her player's phones and was taking photos . . . [and] telling students that he likes both men and women, along with other inappropriate comments." [145-2], p. 16.

On Friday morning, while the assistant principal was on his way to meet with Belcher about the incident reported the night before, the assistant principal received additional information that Belcher had also thrown markers at students. Upon questioning, Belcher admitted to getting upset and throwing markers at students. He denied, however, the inappropriate comments and "repeatedly denied taking photos on a student's phone." *Id.* at p. 3. Belcher was allowed to return to Ocean Springs Middle School on Friday, as scheduled. But at the end of the school day on Friday, April 21, 2023, the assistant principal received proof from two students that Belcher had taken photos on their phones. As a result, the assistant principal informed Belcher at the end of the day that he was no longer permitted to serve as a substitute teacher at Ocean Springs Middle School or otherwise return to the school.

The following Monday, after Belcher's termination from Ocean Springs Middle School, the Ocean Springs School District was notified by students that Belcher had inappropriate communications via Snapchat with several students. [145-2], p. 16. Specifically, PH, who was 12 years old at the time, asserts that she was "contacted by Belcher through social media while she was at home [and Belcher] ask[ed] her if he could come over and watch TV." [40], p. 3. Belcher also "made sexual remarks to PH and even asked her for oral sex" during school hours. *Id.* Plaintiff PH "reported Belcher and his inappropriate behavior to her mother who contacted the school." *Id.* Plaintiff JB asserts that "Belcher sent JB a text that he was horny, sent pictures of himself naked and sent a video of him masturbating." *Id.* at pps. 3-4. "JB reported Belcher to his father who contacted law enforcement." *Id.* at p. 4. Plaintiff DTC, who was 13 at the time, also reported to the school's behavioral specialist that "Belcher had made unwanted physical contact with her." *Id.* Plaintiff asserts that she "was invited into Belcher's classroom to speak with Belcher about an assignment; while there, Belcher stepped behind DTC blocking her exit." *Id.* at p. 4. Then, "Belcher grabbed [Plaintiff's] face and began kissing her and feeling on her body [and] Belcher became more aggressive in his physical touching and kissing." *Id.* Plaintiff alleges that she was "fearful for her safety as Belcher held her in his grip" as she had no means of escape. *Id.* Despite Plaintiff's attempts to leave, Belcher "kept up his pursuits." *Id.* But once the school bell rang, Plaintiff explained that she "took that moment to escape from Belcher's grasp and flee from the room." *Id.* As a result of these reports, Ocean Springs School District notified the Ocean Springs Police Department. Belcher was indicted for touching of a child for lustful purposes, five counts of exploitation of a child, and three counts of dissemination of sexually oriented materials to persons

under the age of eighteen. Belcher pleaded guilty and was sentenced to twenty years of imprisonment in the custody of the Mississippi Department of Corrections. He was 22 years old.

This lawsuit followed. Plaintiff asserts claims for negligence, vicarious liability, constitutional violations under Section 1983 against Kelly Services and Ocean Springs School District, as well as gross negligence/punitive damages against Kelly Services.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). It is the burden of the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there is a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

---

[4] Plaintiff PH and Plaintiff JB's claims against Kelly Services and Ocean Springs School District were dismissed with prejudice following a resolution between the parties. Plaintiff PH, Plaintiff JB, and Plaintiff DTC's claims against Belcher, however, remain. But none of the Plaintiffs' claims against Belcher for assault, invasion of privacy, intentional infliction of emotional distress, or false imprisonment are currently before this Court via a motion and are therefore not addressed in this Opinion.

It is not permissible to make credibility determinations or weigh the evidence at the summary judgment stage. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Yet, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

## III. KELLY SERVICES' MOTION FOR SUMMARY JUDGMENT

### A. Vicarious liability/respondeat superior

Plaintiff claims that Kelly Services is "vicariously liable" for Belcher's intentional sexual assault of Plaintiff. [40], p. 6. "The doctrine of respondeat superior imputes vicarious liability from an employee to an employer when the employee's acts were 'within the scope of the authority conferred.'" *RGH Enterprises, Inc. v. Ghafarianpoor*, 329 So. 3d 447, 449 (Miss. 2021) (citing *Com. Bank v. Hearn*, 923 So. 2d 202, 204 (Miss. 2006) (internal quotations omitted)). "[M]eaning that the acts of an employee will render the employer vicariously liable only when the employer authorized the act, ratified the act after its commission, or the act occurred within the course and *scope* of employment." *L.T. ex rel. Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 758 (S.D. Miss. Mar. 31, 2000) (emphasis added) (collecting cases). Plaintiff does not argue that Kelly Services authorized Belcher to engage in sexual misconduct. So the first question this Court must answer is whether Belcher was acting "within the course and *scope* of employment" when he "grabbed DTC['s] face and began kissing her and feeling on her body." [40], p. 4. If not, the Court must then determine whether Kelly Services ratified Belcher's sexual misconduct after its commission.

**i. Scope of employment**

The Mississippi Supreme Court has noted that "[s]cope of employment is a relative term, difficult of exact definition." *Horton v. Jones*, 44 So. 2d 397, 399 (Miss. 1950). But as a general rule, for conduct "[t]o be within the scope of employment, the act must be (1) the kind he is employed to perform, (2) occur substantially within the authorized space and time limits, (3) actuated, at least in part, by a purpose to serve the master, (4) and if force is intentionally used, it is not unexpected by the master." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (Miss. Ct. App. 2006) (citing *Marter v. Scott*, 514 So. 2d 1240, 1242-43 (Miss. 1987)).

First, this Court must determine whether Belcher's conduct—the sexual assault on DTC—is of the kind he was employed to perform as a substitute teacher. According to the contract between Kelly Services and the Ocean Springs School District, Belcher was hired as a substitute teacher "to provide education-related services." [145-7], p. 1. Undeniably, grabbing and kissing Plaintiff DTC's face is unrelated to his duties as a substitute teacher. Indeed, Kelly Services' employees must adhere to a "no-touch" policy as it relates to physical contact between substitute teachers and students. [143-2], p. 3. The Mississippi Court of Appeals, the Fifth Circuit, and other courts have also routinely held that sexual torts are not "considered to be within the scope of employment."[5] Plaintiff therefore fails to meet her burden at the first prong. Although the Court could end its analysis here, it will address the remaining prongs for clarity.

[5] *Franklin v. Turner*, 220 So. 3d 1003, 1009 (Miss. Ct. App. 2016); *Tichenor v. Roman Cath. Church of New Orleans*, 32 F.3d 953 (5th Cir. 1994) ("It would be hard to imagine a more difficult argument than that Cinel's illicit sexual pursuits were somehow related to his duties as a priest or that they in any way furthered the interests of St. Rita's, his employer."); *L.T. ex rel. Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 758 (S.D. Miss. 2000) (finding that the sexual assault committed by Officer Collins was "not in the scope of his employment with Westwood Apartments" because "the acts committed by Officer Collins directly contradict his purpose as a security guard; indeed, nothing could be further from his duties as a guardian of the peace and protector of tenants in the furtherance of the business of Westwood than the commission of a criminal act or intentional tort upon the tenants or guests.").

Second, it is undisputed that Belcher's sexual misconduct occurred on school property during school hours while Belcher was working as a substitute teacher at Ocean Springs Middle School. So Belcher's conduct occurred substantially within the authorized space and time limits of his employment, and Plaintiff meets her burden on this prong.

To satisfy the third prong, Plaintiff must show that Belcher's conduct was "'committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business'" or that his "'tortious acts [were] incidental to the authorized conduct.'" *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 464 (5th Cir. 2005) (quoting *Adams v. Cinemark U.S.A., Inc.*, 831 So. 2d 1156, 1159 (Miss. 2002)). According to Plaintiff, "Belcher's acts were incidental to his employment" under *Horton v. Jones*, 44 So. 2d 397 (Miss. 1950), because Belcher's conduct "occurred during the days when Belcher was assigned and functioning as the Plaintiffs' teacher." [151], p. 9. "*Horton*, like the present case, concerned liability of the employer. In *Horton*, the employee was a cab driver. Upon dropping a lady off at her destination, the cab driver realized the lady had left her pocketbook in the seat, so he slammed the door and sped away, waiving her pocketbook at her." *Partrige v. Harvey*, 805 So. 2d 668, 670 (Miss. Ct. App. 2002). The Mississippi Supreme Court determined that while Horton went beyond his authority in stealing his passenger's pocketbook, he nevertheless acted in the general scope of employment because "(1) the act of driving his employer's car and picking up and dropping off passengers is the nature of his job duties; (2) upon seeing the pocketbook, he sped off and went to pick up another passenger, again, acting in the scope of his duties to pick up passengers; and (3) his 'getaway' occurred during execution of these duties." *Partrige*, 805 So. 2d at 670.

Plaintiff submits that the Mississippi Supreme Court "found it significant that the defendant cab driver kept working his shift after he stole the plaintiff's purse and money." [151], p. 9. And because Belcher, like in *Horton*, "continued in his general teaching and related duties throughout the school day, after each of the incidents that occurred during school lunch hours and Plaintiffs' morning class times on school premises," Plaintiff submits that Belcher's conduct must therefore be incidental to his employment. [151], p. 9. This Court disagrees.

To begin, Horton was performing a duty authorized by his employment when he engaged in the wrongful conduct: driving a cab to get another passenger; whereas Belcher's sexual assault of Plaintiff falls outside of any duty authorized by his employment. *See Howse ex rel. Blasingame v. Brentwood Behav. Healthcare of Mississippi*, 139 So. 3d 125, 130 (Miss. Ct. App. 2014) (finding that an employee at Brentwood was not acting within the course and scope of his employment when he assaulted Howse, a patient at the facility). Additionally, other courts have found that assaults, whether they be physical or sexual in nature, are not motivated by the employee's concern about furthering their employer's business but rather "personal animosity" or "personal gratification."[6] Plaintiff's argument fails at the third prong.

Finally, Plaintiff asserts that Belcher was "aggressive in his physical touching and kissing." [40], p. 4. While it can be assumed that such force was intentional, there is no evidence that Kelly Services would have expected Belcher to behave in such a way—nor does Plaintiff make such an argument. *See Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 464 (5th Cir. 2005). ("An intentional

[6] *Adams*, 831 So. 2d at 1160; *Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006); *Parmenter v. J&B Enterprises, Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) ("Jones was employed as a cashier at the time of her altercation with Parmenter, and nothing within her job description required her to involve herself in an altercation, whether verbal or physical, with patrons of the restaurant"); *Thompson v. Everett Clinic*, 860 P.2d 1054, 1058 (Wash. Ct. App. 1993). ("The assault emanated from [the doctor's] wholly personal motives for sexual gratification. There is no reason the assaultive act can be considered to have been done in furtherance of the Clinic's business, or cloaked with some apparent authority.").

violent assault on a co-worker is quite obviously neither committed as a means of accomplishing the purposes of the employment nor of the same general nature as authorized conduct. None can seriously question that."). Accordingly, Plaintiff fails to meet her burden on this prong.

For all of these reasons, the Court finds that Belcher was not acting within the scope of his employment at the time he sexually assaulted Plaintiff. *See Franklin v. Turner*, 220 So. 2d 1003, 1007 (Miss. Ct. App. 2016) ("a master is not liable for its employee's actions if the employee 'abandoned his employment and went about some purpose of his own not incidental to the employment.'") (citation omitted).

**ii. Ratification**

Although Plaintiff did not succeed in showing that the sexual assault was done within the scope of Belcher's employment, Plaintiff's vicarious liability claim may nevertheless proceed to a jury if she can show that Kelly Services ratified Belcher's conduct. Under Mississippi law, an employer is liable for an employee's intentional or criminal acts—which would be Belcher's sexual assault of Plaintiff in this case—when the employer "ratified the act." *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 959 (5th Cir. 1994). "Ratification does not arise by operation of law; rather, 'a person ratifies an act by (a) manifesting assent that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.'" *In re Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (brackets omitted) (quoting Restatement (Third) of Agency § 4.01(2) (2005)). The Mississippi Supreme Court has explained that "[r]atification is a principal's after-the-fact, conscious decision to be bound by an agent's unauthorized act, and it is that decision that can trigger the principal's liability to third parties." *Id.* Thus, "[w]here an employer learns of the past intentional conduct and does

nothing to reprimand the employee, this acts as a ratification." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (Miss. Ct. App. 2006) (citing *Royal Oil Co. v. Wells*, 500 So. 2d 439, 446 (Miss. 1986).

The Mississippi Court of Appeals, however, has held that while "retention of the offending servant in the employment of the master may be admitted in evidence as bearing upon the ratification, the mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act." *Franklin v. Turner*, 220 So. 3d 1003, 1009 (Miss. Ct. App. 2016) (citation omitted). "[U]nder some circumstances, a principal's inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act." *In re Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011). In other words, ratification "must be based on full, actual knowledge of the facts of the transaction. Constructive or imputed knowledge is not enough." *Miller v. Union Planters Bank, N.A.*, No. 2:05-cv-2144, 2006 WL 3391095, *5 (S.D. Miss. Nov. 22, 2006) (citing *NMS Indus., Inc. v. Premium Corp.*, 451 F.2d 542, 544-45 (5th Cir. 1971)).

Plaintiff has presented evidence that could show Kelly Services learned of Belcher's past misconduct at North Gulfport Middle School on September 2, 2022, and took no action. But apart from presenting evidence that Kelly Services may have learned about Belcher's prior misconduct before placing him at Ocean Springs Middle School—which Kelly Services adamantly denies— "the only evidence of ratification was that [Kelly Services] did not fire [Belcher]" immediately upon being notified of that conduct. *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (applying Mississippi law); [144], p. 8, n.1. That fact "is insufficient on its own to establish ratification." *Id.* (citing *Craft v. Magnolia Stores Co.*, 161 Miss. 756, 138 So. 405, 406 (1931)); *Little v. K&B Mississippi Corp.*, No. 3:06-cv-501-WHB, 2007 WL 2417353, *7 (S.D. Miss. Aug. 27, 2007)

("At best, Little argues that Rite Aid did not immediately investigate or remedy Bass's conduct. Neither of these arguments are sufficient to show ratification."); *Williams v. Clerac, LLC*, 635 F. Supp. 3d 607, 611, 613 (N.D. Ohio 2022) (finding no vicarious liability for Pounds' criminal conduct where he "stalked, kidnapped, threatened at gun point, and ultimately killed Ms. Williams," even though plaintiff alleged that "Enterprise received detailed information of six incidents where Pounds used Enterprise rental cars to stalk, chase, harass, and intimidate Ms. Williams."). And to be sure, Kelly Services did terminate Belcher's employment after being notified of his sexual assault on Plaintiff. So no argument can be made that Kelly Services ratified the sexual assault of Plaintiff. Kelly Services' Motion for Summary Judgment on Plaintiff's vicarious liability claim is therefore granted.

**B. Negligent hiring, retention, and supervision**

Plaintiff's argument that Kelly Services was negligent in hiring Belcher is also unpersuasive. There is no evidence that Belcher had engaged in any misconduct prior to his *hiring* by Kelly Services in June of 2022, or at his first substitute teaching placement at Harrison Central High School in July of 2022 (prior to his placement at North Gulfport Middle School in September of 2022). Accordingly, this Court will focus on Plaintiff's negligent retention and supervision claims.

**i. Whether Kelly Services was negligent for the retention and supervision of Belcher**

The Mississippi Supreme Court says that claims "of negligent hiring, retention and supervision . . . [are] simply [] negligence claim[s], requiring a finding of duty, breach of duty, causation and damage." *Roman Cath. Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1230 (Miss. 2005). For a plaintiff to succeed on negligent retention and supervision claims under Mississippi

law, "the plaintiff must prove that the defendant had actual or constructive knowledge of the employee's unfitness or otherwise dangerous tendencies." *James v. Antarctic Mech. Services, Inc.*, No. 3:18-cv-678-CWR, 2020 WL 86209, *4 (S.D. Miss. Jan. 7, 2020) (citing *Doe ex rel. Brown v. Pontotoc Cty. Sch. Dist.*, 957 So. 2d 410, 417 (Miss. Ct. App. 2007)). "'Actual notice' is defined as 'notice expressly and actually given . . .' while 'constructive notice' is defined as 'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (quoting Black's Law Dictionary 1062 (6th ed. 1990)).

According to Belcher's affidavit, Kelly Services had actual notice of his prior misconduct at North Gulfport Middle School, hid the conduct, and still retained him as an employee. In his affidavit, Belcher swears that the "same day" or "the day after" the incident, he "told [Kelly Services'] everything that had happened." [55-4], ¶ 16. Specifically, Belcher attests that some of the students "asked questions about [his] family and personal life, and [he] let them look at family photos on [his] cell phone, but they also scrolled through the photos and saw nude photos of [Belcher] and others on [his] cell phone." [55-4], p. 1. After he was detained, Belcher also states that the officer confiscated three knives from his possession. Belcher further claims that Kelly Services "advised [him] that the Gulfport school did not have enough evidence to charge [him] with a crime, so [he] was in the clear, and [they] all had nothing to worry about." *Id.* Indeed, Belcher asserts that he was "never contacted by anyone at the Gulfport School District about any investigation into the nude photos incident or the knives." *Id.* at p. 2. So, according to Belcher, Kelly Services knew shortly after the incident that he, rather than another substitute teacher, Mr.

Charles, was responsible for the incident at North Gulfport Middle School. And it is not for this Court to make credibility determinations—that is for a jury to decide. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). For these reasons, Kelly Services' Motion for Summary Judgment is denied as to negligent retention and supervision. Although the Court could end here, for clarity of the record, the Court will provide additional analysis regarding whether a fact issue exists as to Kelly Services' failure to follow their own Incident Reporting Policy.

Kelly Services submits that North Gulfport Middle School contacted them after the September 2, 2022, incident and reported that a different substitute teacher—Cedric Charles—was responsible. Rather than asking the school to send evidence, such as pictures, student statements, or teacher identification, as required by their Incident Reporting Policy, Kelly Services seemingly took North Gulfport Middle School's report as true and "attempted numerous times to reach out to Cedric Charles." [154], p. 8; [143-4]. Kelly Services claims that there "was no indication at all during the course of Kelly'[s] investigation . . . that Cedric Charles was not the properly identified party." [154], p. 8. Again, the Court has already found that Belcher's affidavit presents a fact question as to Kelly Services' knowledge. But even if Mr. Charles was originally "misidentified as the culprit" in North Gulfport Middle School's report, if Kelly Services had followed their Incident Reporting Policy, then Kelly Services could have had a different route to actual knowledge of Belcher's sexual misconduct months before he ever went to Ocean Springs Middle School. Indeed, Kelly Services' Incident Reporting Policy [150-11] provides that once an

incident involving a Kelly Services employee is reported, Kelly Services is instructed to "contact the School and inquire about what this issue is all about" and "[a]sk the school to send over any videos, pictures, or student statements, if applicable." [150-11], p. 1. Then, Kelly Services must deactivate the Kelly Services employee in the system, contact the Kelly Services employee to inform them of the allegation(s) against them, and ask the Kelly Services employee to submit "a statement regarding their side of the issue and send them the KE Statement Form (e301) to fill out." *Id.* at p. 2. So in following their own Incident Reporting Policy, Kelly Services would have obtained "videos, pictures, or student statements" pertaining to the incident. [150-11], p. 1. Then, Belcher's teacher ID photo, or some other evidence, may have cleared up the misidentification, as Kelly Services could have seen then that Belcher was the culprit, instead of Mr. Charles.

The record also shows that, despite receiving Belcher's statement about the September 2, 2022, incident at North Gulfport Middle School, Kelly Services potentially did not follow their Incident Reporting Policy by failing to deactivate Belcher in their system. As a result, Belcher was then placed at D'Iberville High School where he was ultimately fired for throwing a marker at a student. And although Kelly Services suspended Belcher for a few days following the D'Iberville High School Incident, Kelly Services eventually placed him at Ocean Springs Middle School in April of 2023, without notifying Ocean Springs Middle School of his prior misconduct.

Although Kelly Services claims to have "properly investigate[d] the September 2nd allegation from North Gulfport," the record, in the light most favorable to Plaintiff—and Kelly Services' own argument—reveals that Kelly Services may have failed to comply with their own Incident Reporting Policy. And "in Mississippi, non-compliance with an internal policy is evidence that is probative of, but not dispositive of, breach of duty." *Keen*, 702 F.3d at 248 (citing *Boyd*

*Tunica, Inc. v. Premier Transp. Services, Inc.*, 30 So. 3d 1242, 1253-54 (Miss. Ct. App. 2010)); *see also Roberts v. AAA Cooper Transp., Inc.*, No. 2:17-cv-232-RWS, 2021 WL 9031117, at *4 (N.D. Ga. Jun. 2, 2021) (finding that Georgia courts have granted summary judgment to employers on negligent hiring and retention claims "when there is no evidence that the employer knew of violations on the employee's driving record or ignored its own reasonable policy of investigating such records, and denied summary judgment when there is evidence that the employer knew of violations on the employee's record.").

Therefore, based on the information before it, and for the similar reasons previously identified at the July 7, 2025, hearing on the motion to dismiss, the Court finds that Plaintiff has set forth evidence showing, at least at this stage, that questions of fact exist as to whether Kelly Services negligently retained and/or supervised Belcher. Specifically, Plaintiff has alleged a genuine issue of material fact that Belcher directly told Kelly Services of his prior misconduct and that Kelly Services could have known about Belcher's incompetence or unfitness and his misconduct at North Gulfport Middle School if Kelly Services had followed its own Incident Reporting Policy.

**ii. Negligence per se**

Plaintiff also argues that Kelly Services was automatically negligent for the retention and supervision of Belcher by failing to comply with the background check mandates found in Mississippi Code Section 37-9-17. This second argument, in essence, amounts to a theory of negligence per se—which Plaintiff did not plead in the Amended Complaint. And a "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State University*,

429 F.3d 108, 113 (5th Cir. 2005). For this reason alone, Plaintiff's argument arising under Mississippi Code Section 37-9-17 must be dismissed.

Even if this negligence per se claim were properly pled, it would nevertheless fail because there is no evidence or testimony currently before the Court that if Kelly Services had obtained Belcher's background check through a government agency that it would have revealed any criminal history. "Negligence per se renders a defendant liable without proof of reasonable care when the plaintiff proves the defendant violated an applicable statute." *Dooley v. Byrd*, 64 So. 3d 951, 960 (Miss. 2011) (citation omitted). "However, the plaintiff still must prove causation and damages." *Keen v. Miller Environmental Group, Inc.*, 702 F.3d 239, 245 (5th Cir. 2012) (applying Mississippi law); *Roman Cath. Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1230 (Miss. 2005) (holding that claims of negligent "retention and supervision . . . [are] simply [] negligence claim[s], requiring a finding of duty, breach of duty, causation and damage.").

"For a particular damage to be recoverable in a negligence action, the plaintiff must show that the damage was proximately caused by the negligence. In order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage." *Glover*, 968 So. 2d at 1277. The cause in fact of an injury is "that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred." *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004). "Once cause in fact is established, the defendant's negligence will be deemed the legal cause so long as the damage 'is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act.'" *Thomas*, 360 So. 3d at 214. "Generally, if a person of ordinary intelligence

would not have 'anticipated the dangers that his negligent act created for others,' then the injury would not be considered foreseeable." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (quoting *Ogburn v. City of Wiggins*, 919 So. 2d 85, 92 (Miss. Ct. App. 2005)).

"Mississippi's legislature has mandated that employers conduct criminal background checks on all new hires within certain specified fields," such as "substitute teachers." *Keen v. Miller Environmental Group, Inc.*, 702 F.3d 239, 246 (5th Cir. 2012) (citing MISS. CODE ANN. § 37-9-17)). Section 37-9-17 provides, in relevant part:

> Superintendents/directors of schools under the purview of the State Board of Education, the superintendent of the local school district and *any private firm under contract with the local public school district to provide substitute teachers* to teach during the absence of a regularly employed schoolteacher *shall require, through the appropriate governmental authority,* that *current criminal records background checks* and *current child abuse registry checks* are obtained, and that such criminal record information and registry checks are on file *for any new hires* applying for employment as a licensed or nonlicensed employee at a school and not previously employed in such school under the purview of the State Board of Education or at such local school district prior to July 1, 2000. In order to determine the applicant's suitability for employment, *the applicant shall be fingerprinted*. If no disqualifying record is identified at the state level, the fingerprints shall be forwarded by the Department of Public Safety to the Federal Bureau of Investigation for a national criminal history record check.

MISS. CODE ANN. § 37-9-17(2) (emphasis added). Plaintiff argues that Kelly Services "did not fulfill its duties to 'require' and 'ensure' criminal background checks [were] performed as required by § 37-9-17." [153], p. 7. Specifically, Plaintiff claims that Kelly Services had a nondelegable duty to obtain a criminal background check of Belcher "through the appropriate government authority." Plaintiff also argues that Belcher's fingerprints were not forwarded to the FBI for a national criminal history check. But Plaintiff fails to show how such compliance would have revealed any disqualifying criminal history on the part of Belcher such that Kelly Services' negligence caused her injury.

As discussed above, Belcher was arrested and detained on September 2, 2022, at North Gulfport Middle School after a few students saw nude photos of Belcher and others on his phone. He was questioned by the Gulfport Police Department School Resource Officer and the North Gulfport Middle School Principal decided not to press charges. Belcher was advised that he was banned from the premises and was escorted off campus. The Police Report confirms that "there was no[] criminal act committed at this point in time in regards to the cell phone incident" and that the Principal "did not want criminal charges filed for the knives that Belcher possessed." [143-5], p. 4. Following this misconduct, Belcher was inactive with Kelly Services for a period of time. As a result, Kelly Services obtained an additional background check on March 30, 2023, before placing Belcher at another school. [143-3], pps. 4-6. That background check revealed no criminal history, which makes sense because when Belcher was first hired, he had no criminal history and because there was no charge or conviction after the incident at North Gulfport Middle School. Belcher was then placed at Ocean Springs Middle School on Monday, April 17, 2023. *Id.*

Plaintiff has presented no evidence that a government background check would have shown any criminal history—nor did she obtain any such background check during discovery. Indeed, even if Kelly Services had obtained its own background check on Belcher not via a private firm but through the government, as Plaintiff argues was mandated, then there is still nothing currently before this Court showing that a criminal record would have been revealed. Plaintiff has not proved that her injury was caused by Kelly Services' alleged failure to comply with Section 37-9-17. Kelly Services is entitled to summary judgment on Plaintiff's alternative argument under Mississippi Code § 37-9-17(2).

**C. Gross negligence and punitive damages**

In Mississippi, punitive damages are to be assessed only in extreme cases. *See Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985). "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988). "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (Miss. 2000) (citation omitted). When deciding whether summary judgment is warranted on a punitive damages claim, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). And it must "view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) (citation omitted); *Evans v. Hayes*, No. 2:05-cv-379-KSM, 2006 WL 2975473, at *4 (S.D. Miss. Oct. 17, 2006) (denying partial summary judgment based on factual disputes and reserving issue until after liability phase).

In viewing the facts in the light most favorable to Plaintiff, the Court finds that her gross negligence claims against Kelly Services survive summary judgment. Specifically, the evidence surrounding Kelly Services' discovery of Belcher's misconduct at North Gulfport Middle School leaves open to reasonable disagreement whether Kelly Services, in subsequently placing Belcher at Ocean Springs Middle School, acted with "reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Dame v. Estes*, 233 Miss. 315, 318, 101 So. 2d 644

(1958). Although punitive damages are highly disfavored, "there are too many factual disputes to resolve the issue of submission of the punitive damages claim to the jury" at this stage. *Evans*, 2006 WL 2975473, at *4.

For example, the parties dispute whether Belcher told Kelly Services that North Gulfport Middle School students saw nude photos of Belcher and others on his phone, whether Kelly Services knew that Belcher had knives on his person while at North Gulfport Middle School, whether Belcher was removed from D'Iberville High School for throwing a marker at a student, and whether Kelly Services followed their own Incident Reporting Policy. Despite these factual disputes and allegations that Kelly Services knew of Belcher's prior misconduct, and arguably placed him at Ocean Springs Middle School anyway, it is clear from the record that Ocean Springs School District was not informed about Belcher's prior misconduct. And while Kelly Services' makes no argument that Belcher should have been retained and placed at Ocean Springs Middle School despite his prior misconduct, Kelly Services' entire defense is that they had no knowledge of Belcher's misconduct. But again, in his affidavit, Belcher states that "Kelly Services advised me that the Gulfport school did not have enough evidence to charge me with a crime, so I was in the clear, and we all had nothing to worry about." [55-4], p. 2.

In the light most favorable to Plaintiff, Kelly Services hid Belcher's prior conduct from Ocean Springs School District and from Plaintiff. Kelly Services' Motion for Summary Judgment as to gross negligence and punitive damages is denied. "Of course, the denial of summary judgment on the issue of punitive damages does not foreclose the possibility that the Court might ultimately refuse to submit the question to a jury." *Welch v. Loftus*, 776 F. Supp. 2d 222, 227 (S.D. Miss. Feb. 23, 2011).

**D. 28 U.S.C. § 1983**

Section 1983 provides redress for deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (noting that Section 1983 does not create any substantive rights; it simply provides a remedy for the applicable rights). To state a Section 1983 claim, a plaintiff "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal quotations omitted). "Because the Fourteenth Amendment protects liberty and property interests only against invasion by the state, a section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury." *Bass*, 180 F.3d at 241 (citation omitted). "In such cases, the 'under color of law' and state action inquiries merge into one." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S. Ct. 2744, 2756, 73 L. Ed. 2d 482 (1982)).

Here, only the second prong is at issue, at least at the motion for summary judgment stage, as Kelly Services does not contest Plaintiff's claim that Kelly Services violated her "right to personal security, physical safety and bodily integrity" under the Fourteenth Amendment's substantive due process clause. [40], p. 7; *United States v. Sineneng-Smith*, 590 U.S. 371, 375, 140 S. Ct. 1575, 206 L. Ed. 2d 866 (2020) (explaining that courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Instead, Kelly Services argues that because it is not a state actor and was not engaged in state action, Kelly Services was not acting under color of state law.

"For the purpose of section 1983, private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State.'" *Priester v. Lowndes County*, 354 F.3d 414,

423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 240-41 (5th Cir. 1999)). In determining the question of "fair attribution," the Supreme Court has held:

> (a) the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by it or by a person for whom it is responsible, and (b) the party charged with the deprivation must be a person who may fairly be said to be a state actor, either because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 923, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). "The Supreme Court has applied several different formulas to determine whether seemingly private conduct may be charged to the state." *Bass*, 180 F.3d at 240-41 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S. Ct. 2744, 2754-55, 73 L. Ed. 2d 482 (1982)). There are three tests that provide exceptions to the general rule (that private conduct is not considered state action): the public function test, the state compulsion or coercion test, and the nexus or joint action test. *Id.* According to the parties, however, only the public function test and the nexus or joint action tests are relevant. "Under any formula, however, the inquiry into whether private *conduct* is fairly attributable to the state must be determined based on the circumstances of each case." *Bass*, 180 F.3d at 242 (emphasis added). *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (deciding whether a deprivation of a protected right is fairly attributable to the state "begins by identifying the specific conduct of which the plaintiff complains.").

**i. Public function test**

Under the public function test, "a private entity may qualify as a state actor when it exercises 'powers traditionally *exclusively* reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 139 S. Ct. 1921, 204 L. Ed. 2d 405 (2019) (emphasis added) (citation omitted); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)

(explaining that the "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State"). "[T]o qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally and exclusively performed the function." *Id.* (citations omitted). The Supreme Court "has stressed that 'very few' functions fall into that category." *Id.* (finding "running elections and operating a company town" are exclusively state functions) (citations omitted).

As a result, courts have construed the public function test narrowly, finding that education and teaching are not exclusively state functions. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815 (9th Cir. 2010) (concluding that "Horizon's provision of educational services is not a function that is traditionally and exclusively the prerogative of the state, and therefore is not a basis for holding that Horizon acted under color of state law."); *Johnson v. Pinkerton Acad.*, 861 F.2d 335, 338 (1st Cir. 1988) ("educating children of high school age was not traditionally an exclusive public function.").[7] Under these authorities, then, Kelly Services' role as an employer in placing a substitute teacher at Ocean Springs Middle School is insufficient to show that Kelly Services was state actor.

**ii. Nexus/joint action test**

"Under the nexus or joint action test, state action may be found where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint

---

[7] Since Plaintiff has presented no authority, and this Court has found none, that education and teaching are exclusively state functions, it follows that the hiring and supervision of substitute teachers cannot be an exclusive state function either. Just because "a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982).

participant in the enterprise.'" *Bass*, 180 F.3d at 242 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 457, 42 L. Ed. 2d 477 (1974)). Thus, private parties "jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [1983]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605, 26 L. Ed. 2d 142 (1970). To act "under color of law," however, "does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* Accordingly, the "focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether 'such a close nexus between the State and the challenged action' exists 'that seemingly private behavior may be fairly treated as that of the State itself.'" *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 246 (5th Cir. 2020) (citation omitted).

To be engaged in joint action, a private party must be a "willful participant" with the State or its agents in an activity which deprives others of constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Here, Plaintiff alleges that Kelly Services, a private entity, contracted with Ocean Springs School District "to provide essential government services (vetting, hiring and placing substitute teachers in public schools)." [151], p. 11. And "[f]or purposes of the § 1983 claims, it is undisputed that a public school district and its employees, including the school principal, are state actors." *Est. of Massey v. City of Philadelphia*, 118 F. Supp. 3d 679, 687 (E.D. Pa. Jul. 24, 2015) (collecting cases); *see also Doe as next friend Doe v. Jewell*, 151 F.4th 236, 251 (5th Cir. 2025) (implying that school principal is a state actor); *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 120–21 (4th Cir. 2022). As a result, Plaintiff argues that Kelly Services (the private party) willfully participated with Ocean Springs School District (the state actor) to place Belcher at Ocean Springs Middle School as a substitute teacher—despite Kelly Service's knowledge of the prior sexual

misconduct allegation at North Gulfport Middle School. Since this willful participation led to the violation of her substantive due process rights, Plaintiff submits that there is a genuine issue of material fact that Kelly Services is liable under Section 1983. This Court agrees.

For its part, Kelly Services asserts that "merely having a contract or being regulated by the state does not make an entity a state actor." [154], p. 11. As aptly explained by the Eleventh Circuit, Kelly Services' "proposition, of course, is true as far as it goes; the mere fact that a private actor contracts with a governmental entity does not mean that every action taken by the private actor can be attributed to the government." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1268 (11th Cir. 2003). But that is not the end of the inquiry. "[I]n cases (like this one) where the state contractually requires the private actor to take particular actions . . . then it can be said at the summary judgment stage that in acting in accordance with the governmental directive the private actor is merely a surrogate for the state, and the tie between them is sufficiently strong for the nexus/joint action test to be satisfied." *Id.* The Eleventh Circuit found that conclusion to be strengthened "when there is record evidence that the state itself unmistakably directed the private actor to take particular actions." *Id.*

Based on the contract between Kelly Services and Ocean Springs School District—the state actor—Kelly Services was required to "[s]ource, recruit, select, and hire" substitute teachers for Ocean Springs School District. [145-7], p. 1. Kelly Services was responsible for "[p]lac[ing] Assigned Employees according to Customer's requirements;" "[p]ay[ing] Assigned Employees their wages;" "[r]equir[ing] Assigned Employees to agree in writing to protect the confidentiality of Customer's proprietary information;" [r]requir[ing] Assigned Employees to execute agreements that Customer requests regarding intellectual property developed by them in

performance of their work for Customer;" and "[r]equr[ing] Assigned Employees to comply with all rules and policies of Customer (e.g., those relating to premises access and security)." *Id.* Under the contract, Ocean Springs School District was responsible for "controlling the environment in which Assigned Employees perform their work, the details of their work, and, teaching board-approved curriculum and approved lesson plans." *Id.*

Plaintiff challenges the placement of Belcher at Ocean Springs Middle School. And based on the contract between Kelly Services and Ocean Springs School district, the placement of substitute teachers was entrusted to Kelly Services. Since Kelly Services was directed to source, recruit, select, hire, and place substitute teachers at Ocean Springs Middle School, the Court finds "such a close nexus between the State and the challenged action' exists 'that seemingly private behavior may be fairly treated as that of the State itself.'" *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 246 (5th Cir. 2020). It was Kelly Services' placement of Belcher at Ocean Springs School District, despite Kelly Services' alleged knowledge of Belcher's prior misconduct, that led to Plaintiff's injury from a constitutional violation. Kelly Services' Motion for Summary Judgment is denied on this ground.

## IV. OCEAN SPRINGS SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Ocean Springs School District's Motion [145] is one to dismiss, or in the alternative, for summary judgment. Ocean Springs School District presents "matters outside the pleadings" for this Court's consideration, and as a result, the Motion will be construed as one for summary judgment. *General Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x 775, 783 (5th Cir. 2007) (citation omitted).

**A. *Monell* liability**

The Supreme Court has held that "municipal entities like the school district qualify as 'persons'" susceptible to suit under Section 1983. *Littell v. Houston Ind. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). When a Section 1983 claim is asserted against a school district, courts must analyze the following questions separately: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [municipality] is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). The Fifth Circuit has "stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012) (internal citations omitted); *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (citation omitted). Accordingly, this Court will first determine whether Plaintiff has alleged a violation of her Fourteenth Amendment substantive due process right to bodily integrity.

"[O]n its face . . . the Due Process Clause guarantees no substantive rights, but only (as it says) process." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quoting *United States v. Carlton*, 512 U.S. 26, 40, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994) (Scalia, J., concurring)). But binding precedent requires this Court to analyze whether Plaintiff has a valid substantive due process claim. The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. When conducting a due process analysis, courts must first ask

"whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011); *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."). Second, the Supreme Court has "required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (citations omitted).

The Fifth Circuit has held that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994). This is undisputed by the parties.

The only question before this Court, then, is whether Ocean Springs School District was responsible for the violation of Plaintiff's constitutional right to bodily integrity. *See Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 486-497 (E.D. Tex. 2022). For a school district to be liable under Section 1983, a plaintiff must present evidence that: (a) an "official policy" promulgated by (b) a "municipal policymaker" was (c) the "moving force" behind the violation of a constitutional right. *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019). There are three ways to satisfy *Monell*'s "policy" element:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy. Third, even a single decision may constitute municipal policy . . . when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.

*Webb*, 925 F.3d at 215 (collecting cases). Plaintiff claims that Ocean Springs School District's contract with Kelly Services, which was executed by Ocean Springs School District's Chief Financial Officer and then renewed by the Superintendent, "is th[e] 'moving force' policy." [153], p. 13. Ocean Springs School District does not dispute the first two elements,[8] but instead argues that Plaintiff has presented no authority to succeed on the third element. A policy may be shown to be the "moving force" behind a constitutional injury by providing evidence that: (i) the "policy itself was unconstitutional;" or (ii) it was adopted with "deliberate indifference to the known or obvious fact that such constitutional violations would result." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 221 (5th Cir. 2019).

Plaintiff first argues that the policy itself was unconstitutional, per se, because the contract illegally "delegated to Kelly the executive right to 'source, recruit, select, and hire' substitute teachers across all OSSD schools." [153], p. 14; [145-7], p. 1. As a result, the task of performing background checks was also delegated to Kelly Services. And because Kelly Services used a private entity—rather than the government—to obtain background checks, Plaintiff claims that the policy violated Mississippi Code Section 37-9-17. As discussed at length above, Plaintiff's argument is without merit because there is no evidence or testimony currently before the Court that if Kelly Services had obtained Belcher's background check through a government agency that it would have revealed any criminal history. *See* supra p. 19.

Although Plaintiff fails to show that the contract between Kelly Services and Ocean Springs School District was a per se unconstitutional policy, she could have potentially prevailed using a "deliberate indifference" approach. But because she bases her entire deliberate indifference

[8] *See Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 496 (E.D. Tex. 2022) (finding school district was a policymaker).

argument on the School District's alleged noncompliance with Mississippi Code Section 37-9-17, however, it too must fail. To be sure, Plaintiff asserts that Ocean Springs School District's policy "allowed Kelly to place substitute teachers in its classrooms without verifying that Kelly complied with the statutory mandates for how the background check is to be performed (e.g. performed by a government entity and not Accusource HR)." [153], p. 17. Since this argument has been addressed previously in this Opinion, further explanation is unnecessary. Instead, the Court incorporates and adopts its prior analysis as to why Plaintiff's Mississippi Code Section 37-9-17 claims fail. In short, any allegations that Kelly Services did not follow Mississippi Code Section 37-9-17 is not the moving force or cause behind any alleged constitutional violation.

For these reasons, Plaintiff's Section 1983 claims against Ocean Springs School District are without merit.

**B. Negligence**

Plaintiff also asserts a negligence per se claim against Ocean Springs premised on Mississippi Code Section 37-9-17, which was not pleaded in the Amended Complaint. And, as discussed above, a "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005). Plaintiff's negligence per se claim against Ocean Springs School District must therefore be dismissed. Even if her negligence per se claims were properly pleaded, however, they are identical to those against Kelly Services. As a result, the Court incorporates and adopts its findings and reasoning as applied to Kelly Services here. Since Plaintiff has presented no evidence that a government background check would have shown any criminal history, Ocean Springs School District's alleged noncompliance with Section

37-9-17 could not be the proximate cause or the legal cause of Plaintiff's injury. Her argument fails and Ocean Springs School District is entitled to summary judgment on this claim.

Ocean Springs School District is also entitled to summary judgment on Plaintiff's negligent hiring claim because Ocean Springs School District did not hire Belcher—Kelly Services did. So there can be no negligent *hiring* claim against Ocean Springs School District. But even if Ocean Springs School District could be legally responsible for Belcher's hiring, Plaintiff has presented no evidence related to Ocean Springs' conduct at the hiring stage that could have proximately caused her damages.

Accordingly, this Court focuses on Plaintiff's negligent retention and supervision claims against Ocean Springs School District.[9] For a plaintiff to succeed on negligent retention and supervision claims under Mississippi law, "the plaintiff must prove that the defendant had actual or constructive knowledge of the employee's unfitness or otherwise dangerous tendencies." *James v. Antarctic Mech. Services, Inc.*, No. 3:18-cv-678-CWR, 2020 WL 86209, *4 (S.D. Miss. Jan. 7, 2020) (citing *Doe ex rel. Brown v. Pontotoc Cty. Sch. Dist.*, 957 So. 2d 410, 417 (Miss. Ct. App. 2007)). The first question before this Court, then, is whether Belcher was an employee of Ocean Springs School District. The Mississippi Supreme Court has provided a list of factors to consider when determining whether an employee-employer or independent-contractor relationship exists:

> (1) The extent of control exercised over the details of the work;
> (2) Whether or not the one employed is engaged in a distinct occupation or business;
> (3) The skill required in the particular occupation;

---

[9] Because Plaintiff's claims "are pure negligence claims outside the reach of discretionary-function immunity" and no additional analysis is necessary on this point. *J.S. by and Through Segroves v. Ocean Springs School District*, 414 So.3d 47, 62 (Miss. 2025) ("the specific choice to hire Sandoval and the choices the District made regarding his training, retention, and supervision, do not involve policy considerations. No policy was set by the District's decision to hire Sandoval or by the decisions made by the district in how to monitor him or to train him.").

> (4) Whether the employer supplies the tools and place of work for the person doing the work;
> (5) The length of time for which the person is employed;
> (6) The method of payment, whether by the time or by the job; and
> (7) Whether or not the work is a part of the regular business of the employer.

*Gulf Coast Transit Servs., LLC v. Mississippi Dep't of Emp. Sec.*, 333 So. 3d 110, 113 (Miss. Ct. App. 2022) (citation omitted).[10]

"The primary factor is the right to or degree of control." *Miss. Emp. Sec. Comm'n v. PDN Inc.*, 586 So. 2d 838, 842 (Miss. 1991). After Belcher was placed at Ocean Springs Middle School by Kelly Services, according to the contract between them, Ocean Springs School District was responsible for:

> controlling the environment in which Assigned Employees perform their work, the details of their work, and, teaching board-approved curriculum and approved lesson plans. . . . Provide adequate Internal controls, supervision, security and instructions for Assigned Employees . . . Supervise the performance of Assigned Employees using the same degree of diligence used to supervise its own employees.

[145-7] pps 1-2. According to the contract, Ocean Springs School District was responsible for approving Belcher's timesheet and making "reasonable efforts to ensure . . . approval . . . and . . . to expedite substitute payroll." *Id.* at p. 7. Not only does the contract show that Ocean Springs School District was responsible for Belcher's supervision and discipline during his placement, so does the record.[11] Indeed, after receiving a report that Belcher instructed students to do wall-sits,

[10] It is not always clear whether the law considers someone an "employee," and it is not always clear who the law considers someone's "employer." Sometimes an employee may have more than one employer at the same time. The right to control the employee is the most important part of the analysis, if federal law were to apply, and under either state or federal law, the result would be the same. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).

[11] The record also shows that North Gulfport Middle School was similarly responsible for Belcher's supervision and discipline during his placement. [55-4] (Belcher stating that after students saw the photos on Belcher's phone, they made a report to school administration, who then approached Belcher, questioned him, and ultimately terminated from his substitute teaching position at North Gulfport Middle School).

the assistant principal met with him and about appropriate student discipline in accordance with the school's handbook. [145-1], p. 38. The assistant principal also met with Belcher after receiving a report about Belcher throwing markers at students and after receiving the report from the girls' soccer coach that "Belcher had taken one of her player's phones and was taking photos . . . [and] telling students that he likes both men and women, along with other inappropriate comments." [145-2], p. 16. and. [145-2], pps. 15-16. And of course, the assistant principal ultimately fired Belcher after receiving proof that Belcher had taken photos on students' phones.[12] *Id.*

In examining the remaining factors, the Court finds that Belcher was placed at Ocean Springs Middle School as a substitute teacher, after being hired by Kelly Services for such roles in schools along the Mississippi Gulf Coast. Ocean Springs School District also provided instructions to Belcher upon his placement as well as a "sub-folder" containing instructions from the teacher for whom Belcher was substitute teaching for. [145-1], pps. 32-33. Belcher's placement began on April 17, 2023, and ended on April 21, 2023, as a result of his termination. His hours were that of other employees at Ocean Springs Middle School. *See Sun Vista, Inc. v. Mississippi Dept. of Employment Sec.*, 52 So. 3d 1262, 1267 (Miss. Ct. App. 2011) (finding ample evident that the worker performed a service for the entity in control of his work for wages). Finally, substitute teaching is certainly part of the regular business of Ocean Springs School District. "The weight of the evidence shows [Belcher] was an employee." *Miss. Employment Sec. Comm'n v. Total Care, Inc.*, 586 So.2d 834, 837 (Miss. 1991).[13]

---

[12] The record also shows that after each substitute teacher placement, the schools submitted a "substitute teacher evaluation form" to Kelly Services. The form requested "honest feedback on the performance of [Kelly Services'] substitute teachers." [143-4].

[13] Although Ocean Springs School District does not concede that Belcher was its employee, they offer no argument in support.

The next inquiry is whether Ocean Springs School District had actual or constructive knowledge of the employee's unfitness or otherwise dangerous tendencies." *See James v. Antarctic Mech. Services, Inc.*, No. 3:18-cv-678-CWR, 2020 WL 86209, *4 (S.D. Miss. Jan. 7, 2020) (citing *Doe ex rel. Brown v. Pontotoc Cty. Sch. Dist.*, 957 So. 2d 410, 417 (Miss. Ct. App. 2007)). Here, the question would therefore be whether Ocean Springs School District had actual or constructive knowledge that Belcher could commit a sexual assault.

Before Belcher was placed at Ocean Springs Middle School, he passed another background check completed by Kelly Services, as required by Ocean Springs School District's contract with Kelly Services. Ocean Springs School District also ran Belcher's driver's license through a scanner to confirm he was not a felon or a sex offender before agreeing to Belcher's placement. After complying with these procedures, Belcher was placed at Ocean Springs Middle School as a substitute teacher for seventh grade math.

Monday, April 17, 2023, was Belcher's first day at Ocean Springs Middle School. On Tuesday, Belcher was reported for instructing students to do "wall-sits" as punishment. As a result, the assistant principal met with Belcher on Wednesday to discuss classroom management and counseled Belcher on appropriate punishment and disciplinary actions pursuant to the Ocean Springs Middle School Handbook. [145-1], pps. 37-38. After school on Thursday, the assistant principal received a report from the girls' soccer coach "that Belcher had taken one of her player's phones and was taking photos . . . [and] telling students that he likes both men and women, along with other inappropriate comments." [145-2], p. 16. And as the assistant principal was headed to meet with Belcher about the report from the girls' soccer coach, the assistant principal received another report that Belcher had also thrown markers at students. The assistant principal addressed

each of these reports with Belcher, and although he admitted to throwing markers at students, he denied the report made by the girls' soccer coach. The assistant principal allowed Belcher to return to Ocean Springs Middle School as scheduled on Friday, April 21, 2023. At the end of the school day on Friday, however, the assistant principal was notified—and received proof—that Belcher had taken photos on the phones of two separate students. The assistant principal immediately informed Belcher that he was fired and was prohibited from returning to Ocean Springs Middle School.

It was only after Belcher was fired that students informed Ocean Springs School District that Belcher had engaged in any sexual misconduct at Ocean Springs Middle School. Specifically, on Monday, April 24, 2023, only one week after Belcher was first placed at Ocean Springs Middle School, Ocean Springs School District was notified that Belcher had inappropriate sexual communications via Snapchat with several students. Specifically, PH, who was 12 years old at the time, asserts that she was "contacted by Belcher through social media while she was at home [and Belcher] ask[ed] her if he could come over and watch TV." [40], p. 3. Belcher also "made sexual remarks to PH and even asked her for oral sex" during school hours. *Id.* Additionally, "Belcher sent JB a text that he was horny, sent pictures of himself naked and sent a video of him masturbating." *Id.* at pps. 3-4. That same Monday, Plaintiff also reported that "Belcher had made unwanted physical contact with her." [146], p. 3. Plaintiff reported that Belcher grabbed her face and kissed her and aggressively touched her. [40], p. 4.

Based on this timeline, Ocean Springs School District certainly had no actual notice of Belcher's sexual misconduct, which "is defined as 'notice expressly and actually given . . .'" *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (quoting Black's Law

Dictionary 1062 (6th ed. 1990)). Indeed, "[t]here was no tangible evidence" of Belcher's misconduct until after his termination. *Doe ex rel. Brown v. Pontotoc County Sch. District*, 957 So. 2d 410, 418 (Miss. Ct. App. 2007).

But there is a genuine issue of material fact that Ocean Springs School District had constructive notice of Belcher's misconduct because, in the light most favorable to Plaintiff, Ocean Springs School District "should have known" of his unfitness or incompetence. *See id.* "'[C]onstructive notice' is defined as 'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact *by proper diligence*, and his situation was such as to cast upon him the duty of inquiring into it.'" *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (quoting Black's Law Dictionary 1062 (6th ed. 1990) (emphasis added)). Indeed, a fact finder could reasonably find that if Ocean Springs had promptly investigated the report by the girls' soccer coach, rather than taking Belcher—who had been reprimanded twice for classroom management issues in the four days he had been at Ocean Springs Middle School—for his word, then the violation of Plaintiff's rights may not have occurred. Especially since it is unclear from the record *when* Belcher's sexual assault on Plaintiff took place.

Like in *J.S. by and Through Segroves v. Ocean Springs School District*, while "no previous complaints against [the bus driver] were of the same nature as the events giving rise to the instant litigation, the District received complaints that 'pertained in some way or another to misbehavior or misconduct by students.'" 414 So. 3d at 65. The Mississippi Supreme Court found that because the school district had a system to record and investigate each complaint received, that "a person

of ordinary intelligence could anticipate the failure to properly do so would lead to the type of injury sustained by the plaintiff here." *Id.* So too here.

And unlike in *Doe ex rel. Brown*, there *was* an indication that Belcher was an "unfit or incompetent teacher . . . after he began teaching." *Doe ex rel. Brown*, 957 So.2d at 418. Belcher was at Ocean Springs Middle School only one week and had multiple reports of inappropriate classroom management and even a report of inappropriate, and in the light most favorable to Plaintiff, potentially sexual misconduct. Taken together, a reasonable jury could find that Belcher's actions "at the time of his employment at the [middle] school [] would rise to the level of giving constructive notice to the District of [Belcher's] transgressions." *Doe ex rel. Brown*, 957 So.2d at 418. Plaintiff's negligent retention and supervision claim against Ocean Springs School District will proceed. The Court does note that this analysis is highly dependent on the timeline presented at the summary judgment stage, and that Ocean Springs School District may very well be entitled to a judgment as a matter of law if the timeline shows at trial that the sexual assault occurred early enough in the week that Ocean Springs School District could not have had constructive knowledge to prevent it. But it is not this Court's responsibility to weigh the evidence at this stage. Ocean Springs School District's Motion to Dismiss or in the Alternative for Summary Judgment [145] is denied.

**C. Vicarious liability**

Plaintiff asserts that Ocean Springs School District is vicariously liable "for the actions of Belcher." [40], p. 6. Belcher's actions, as they relate to Plaintiff, include "unwanted physical contact." [146], p. 3. Specifically, "Belcher grabbed [Plaintiff's] face and began kissing her and feeling on her body." [40], p. 4. And as discussed above, Belcher was ultimately convicted for this

conduct and sentenced to twenty years of imprisonment in the custody of the Mississippi Department of Corrections. Under the Mississippi Tort Claims Act, Ocean Springs School District "shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). As a result, Ocean Springs School District cannot be held vicariously liable for Belcher's sexual assault of Plaintiff, for which he was criminally convicted. *Rogers v. Smart*, 521 F. Supp. 3d 615, 618 (N.D. Miss. 2021).

To the extent that Plaintiff attempts to assert a vicarious liability claim against Ocean Springs School District for *Belcher's* negligence, such a claim must fail. To be sure, Plaintiff does not allege that Belcher's conduct was negligent, rather than intentional. In fact, her negligence claims sound solely in negligent hiring, retention, and supervision against Kelly Services and Ocean Springs School District. Without more, any such claim must be dismissed. Finally, "vicarious liability is inapplicable to . . . § 1983 suits," and regardless, such claims were addressed under the *Monell* framework above. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## V. CONCLUSION

IT IS ORDERED that Kelly Services' Motion for Summary Judgment [143] is GRANTED as to Plaintiff's vicarious liability claim and as to any negligence argument arising under Mississippi Code Section 37-9-17; the Motion for Summary Judgment is otherwise DENIED.

IT IS FURTHER ORDERED that Ocean Springs School District's Motion to Dismiss or in the Alternative for Summary Judgment [145] is DENIED as to Plaintiff's negligent retention and supervision claim, but is otherwise GRANTED.

This, the 30th day of September, 2026.

**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**

# APPENDIX 1
## Timeline of Facts in Light Most Favorable to the Plaintiff

| Date | Act | What Kelly Services knew | What Kelly Services did about it | What Ocean Springs School District knew | What Ocean Springs School District did about it |
|---|---|---|---|---|---|
| 6/27/2022 | Belcher fingerprinted at Pascagoula School District for a pre-employment background check | Kelly Services received a certification from Pascagoula School District that Belcher's fingerprints and background check were in compliance with Mississippi law | | | |
| Disagreement between parties | Belcher placed at Harrison Central High School for half of a school day for his first substitute teaching assignment | Placement completed without incident | | | |
| 7/14/2022 | Belcher completed another background check by Kelly Services. [143-3]. | Confirmed no criminal history | | | |
| Unknown | Belcher placed at Gautier High School for two days | Placement completed without incident | | | |
| Unknown | Belcher placed at West Harrison Middle School for two months | Placement completed without incident | | | |
| 9/1/2022 | Belcher's first day of two day placement at North Gulfport Middle School | Placement completed without incident | | | |
| 9/2/2022 | Belcher's students "asked questions about [his] family and personal life, and [he] let them look at family photos on [his] cell phone, but they also scrolled through the photos and saw nude photos of [Belcher] and others on [his] cell phone." [55-4], p. 1. A student reported the incident to the Principal and Assistant Principal after school on 9/2/2022. The principal, assistant principal, and the Gulfport Police Department School Resource Officer approached Belcher. The Officer searched Belcher's phone and confiscated three knives that Belcher had. The principal advised Belcher that if he left the premises and did not return, North Gulfport Middle School would not press charges. Belcher agreed and he was escorted off campus. [143-3], pps. 4-6 | Belcher attests in his affidavit that on either 9/2/2022 or 9/3/2022, "Kelly Services contacted me about the incident and I told them everything that had happened." [55-4], p. 2.<br><br>North Gulfport submitted a "Substitute Teacher Evaluation Form" stating that "Cedric Charles," rather than Belcher, was responsible for the 9/2/2022 incident. | Belcher attests in his affidavit that "Kelly Services advised me that the Gulfport school did not have enough evidence to charge me with a crime, so I was in the clear, and we all had nothing to worry about." [55-4], p. 2 Kelly Services did not ask the school to send evidence, such as pictures, student statements, or teacher identification, as required by their Incident Report Policy.<br><br>Kelly Services did not deactivate Belcher in their system in accordance with their Incident Reporting Policy | Ocean Springs School District found out about this incident on 4/27/2023 from the Ocean Springs Police Department, rather than Kelly Services. [145-1], pps. 113, 116. | |
| Unknown | Belcher placed at D'Iberville High School and threw a marker at a student. | Knew about marker incident | Suspended Belcher for "a few days." [55-4], p. 2. | | |
| 3/30/2023 | Belcher completed another background check by Kelly Services | Revealed no criminal history | n/a | | |
| 4/17/2023 | Belcher placed at Ocean Springs Middle School | | | | |
| 4/18/2023 | Belcher was reported to school administration for instructing students to do wall-sits | | | Received a report about Belcher instructing students to do wall-sits | No action taken this same day |
| 4/19/2023 | | | | | The assistant principal met with Belcher on Wednesday, 4/19/2023, about the report regarding wall-sits and "counseled Belcher on appropriate punishment and |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | disciplinary actions pursuant to the Ocean Springs Middle School Handbook." [146], p. 2. |
| 4/20/2023 | At approximately 6:00 p.m. on Thursday, the assistant principal received a report from "the women's soccer coach . . . that Belcher had taken one of her player's phones and was taking photos . . . [and] telling students that he likes both men and women, along with other inappropriate comments." [146], p. 2. | | | Received the report after school hours | No action taken this same day |
| 4/21/2023 morning | | | | While heading to speak to Belcher about the report from the girls' soccer coach, the assistant principal received additional information that Belcher had thrown makers at students. | The assistant principal questioned Belcher. He admitted to throwing markers at students but denied the facts stated by the girls' soccer coach. |
| 4/21/2023 At the end of the school day | | | | The assistant principal received proof from two students that Belcher had taken photos on their phones. | The assistant principal terminated Belcher. |
| 4/24/2023 | | Ocean Springs School District reported the misconduct to Kelly Services | | Ocean Springs School District was notified by students that Belcher had inappropriate communications via Snapchat with several students. [145-2], p. 16. | Ocean Springs School District notified the Ocean Springs Police Department. |
| 4/24/2023 | | Ocean Springs School District reported the sexual assault to Kelly Services | Kelly Services informed Ocean Springs School District, on the phone after these incidents were reported, that Belcher "was already being questioned for suspicious behavior at another location." [145-1], p. 120. | Plaintiff, who was 13 at the time, also reported to the school's behavioral specialist that "Belcher had made unwanted physical contact with her" at an unknown day during the prior week. [145-2], p. 16. Plaintiff asserts that she "was invited into Belcher's classroom to speak with Belcher about an assignment; while there, Belcher stepped behind DTC blocking her exit." [40], p. 4. Then, "Belcher grabbed [Plaintiff's] face and began kissing her and feeling on her body [and] Belcher became more aggressive in his physical touching and kissing." *Id*. Plaintiff alleges that she was "fearful for her safety as Belcher held her in his grip" as she had no means of escape. *Id.* Despite Plaintiff's attempts to leave, | Ocean Springs School District notified the Ocean Springs Police Department. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Belcher "kept up his pursuits." *Id*. But once the school bell rang, Plaintiff explained that she "took that moment to escape from Belcher's grasp and flee from the room." *Id*. | |
| 4/25/2023 | | | | | Ocean Springs School District discussed with Kelly Services the "concerns with Mr. Belcher having issues at another location and that information not being shared with [the] school district." [145-1], p. 122. |
| 4/27/2023 | | | | Ocean Springs School District learned of Belcher's 9/2/2022 misconduct at North Gulfport Middle School | |
| 4/9/2024 | Belcher indicted for touching of a child for lustful purposes, five counts of exploitation of a child, and three counts of dissemination of sexually oriented materials to persons under the age of eighteen. | | | | |
| 8/19/2024 | Belcher pleaded guilty and was sentenced to twenty years of imprisonment in the custody of the Mississippi Department of Corrections | | | | |